Good afternoon. This is the hearing, In Re. Albert M. Kun, Ninth Circuit Docket Number 18-80104. This is the hearing requested by Mr. Kun in response to this court's order to show cause why the Ninth Circuit should not impose reciprocal discipline against Mr. Kun based on the suspension order entered by the California Supreme Court. So Mr. Kun, I'm sure you understand the issue here is whether the Ninth Circuit should impose reciprocal discipline. We're not revisiting the validity of the California State Bar proceedings. That The issue here is whether this court should respect that determination of the California Supreme Court, and the court will ordinarily do so unless the respondent, you, can show by clear and convincing evidence one of three things. Either that there was a violation of due process, or that there were insufficient facts to support the determination, or that some other grave injustice would occur by this court imposing reciprocal discipline and respecting that the ground rules here, and that's what's before the court. And under our, under the federal rules of the appellate procedure, you're entitled to an evidentiary hearing before the court imposes reciprocal discipline or makes the determination whether or not to impose reciprocal discipline. So we've received your filings, and we have copies of the state court record that we have been able to examine, and I think I understand the basis for your argument, particularly the argument that you make concerning the validity of the subpoena under California and or United States law. So I'm going to give you an opportunity here to elaborate a little bit on your arguments, but I did want you to know that I have read the materials that you've submitted, and that clearly explains the background. So I don't want you to feel compelled to give a step-by-step complete recitation of what you've already submitted in writing. That's really not necessary. It would be more helpful for me for you to outline the key points that you want to make to make sure that I understand them. I will probably have questions for you, and because I will, I think at this stage I'd like the courtroom deputy to swear you in so that your answers will be under penalty of perjury. All right. So how would you propose to proceed today, Mr. Kuhn? I would like to proceed in a way that I would like to add something to it, an additional ground. Actually, we have three cases to review. Fortunately, they're all from the Ninth Circuit. One of them went up to the Supreme Court, and they're all a couple years old. The most recent one is Scheer v. Kelly. You cited that in your supplemental response. I did, but in addition to what I cited it for, I wanted to also add, after I reviewed this several times, I'd like to cite something from Justice Berzon's record. She says, Scheer may be right that the regulation of lawyers in California is unlike California's regulation of any other profession, but she has not demonstrated that this regulatory scheme violates eco-protection. I intend to show that my eco-protection right has been violated by the state bar, and I would like to point out that the Scheer case was a direct review of the district court's opinion. In our case here, we're talking about the Kramer review. Therefore, we are entitled to cite those things that were beneficial to us. And under this, I wanted to point out… I'm sorry to interrupt, but you did raise in your supplemental response that you filed last week, I guess on the 15th of October, you did raise the argument under Scheer that your right to eco-protection was violated, and you quoted in that filing the very sentence you just cited. However, after I reviewed it, I noticed that I reviewed another case that is cited in the opinion, Inouye Rose, 22 California 430, which was the basis that this court held that the California statute constitution is valid in terms of the California regulation of attorneys is valid. The point from that is, however, is the minority opinion, the dissent. There are two dissents at that point, and they explain exactly why I wanted to bring this up. between the Supreme Court's opinion of Sue Generis, that is the supposedly unique position that the attorneys have vis-a-vis the court as officers of the court, and the state bar, which is a state agency and was the people who were looking for the evidence, who gathered the evidence. Therefore, the Sue Generis opinion is inapplicable to that point. The Sue Generis position of the Supreme Court, they can do anything, they don't have to have a hearing, they don't have to have an opinion, relates to the, once it gets to the court, we are talking about strictly an administrative agency where these things happened. Therefore, the Sue Generis opinion is inapplicable, in my opinion. And that's what the dissent said. The dissent, Justice Kennard, says exactly what Justice Berzon said. Why is California, why in California only the attorneys are regulated in such a way as opposed to all the dealers and physicians and real estate brokers, etc. He said there's absolutely no reason. And then you get to the opinion. Okay, so you have the majority opinion of the California Supreme Court in Rose that says that their review procedure is constitutional under the system as it now stands. And you have an opinion from our court that says that there is no violation of equal protection under the system in California. So against those two, you're now coming back with a dissenting opinion from the California Supreme Court. And I'm not sure that I can, given the fact that our court, one of the judges of our court has written an opinion saying there is no due process violation. I don't know how I would have room to find an equal protection violation. On the ground that I was explaining that the equal protection as far as the state bar is concerned, the state bar agency, an administrative agency, is different from the way the Kelly case came up. It was that Ms. Scheer filed a complaint in the district court in 1983, and it came up, and the court, this court reviewed the... Reciprocal discipline that was imposed by the district court. However, my case, this case before you, is under Cramer. And under Cramer, at least the way I agree, it's presumed that this court has all the rights to review. It's not reviewing, it's not a direct review of any of the things, but it can review anything that the court has done. And if it finds that the, that they did not follow equal protection, or they violated due process, or the other matters that can be discussed under Cramer, then the court can just say, you know, we're not going to give reciprocal discipline. I'm sorry, I don't understand how the fact that this is a review of whether reciprocal discipline should be imposed. If what you're saying is the basis, the dupe, well, whatever the legal constitutional basis of what you're saying, you're saying, I believe what you're saying is that the California scheme of an administrative agency comes up with a final determination that's reviewable by petition for review to the California Supreme Court. The California Supreme Court rarely, if ever, grants review. That was the question in Ray Rose. And Ray Rose said, well, yeah, that's okay. It complies with the constitutional requirements. So Marilyn Shearer was disbarred. She, the district court did essentially the same thing that this court is now doing, namely saying whether her privilege to practice before that court should be eliminated based upon the California determination. In the course of that litigation, one of the issues that arose was whether the California scheme violates due process. That's the same issue you're raising right here. That issue was finally decided by the Ninth Circuit in a decision saying, no, there is no equal protection violation by the California scheme. Now, that binds me. I can't get around that. There's no standard of review analysis that somehow vitiates the power of Judge Berzon's opinion saying there is no equal protection argument. Well, Judge Berzon says the fact that the California Supreme Court did not have a hearing, did not give an opinion, that does not violate the equal protection. What I'm saying is that the search for facts by the State Bar of California violated my Fourth Amendment rights. You've made that argument. I completely understand that argument about the validity of the subpoena. I don't see an equal protection argument, though. Well, the equal protection argument is that none of the cited agencies, such as the physicians, such as the contractors, such as the others, would have the same treatment that we are getting. Essentially, we are attorneys. We are getting in the worst position. We are officers of the court, and yet we are in the worst position than anybody else. And there isn't a case. Well, isn't that what Judge Berzon was addressing precisely in the sentence? She may be right that the regulation of lawyers is unlike regulation of any other professionals. There's your equal protection basis, right? Lawyers versus other professionals. But she has not demonstrated that this regulatory scheme violates equal protection. I mean, the scheme applies to lawyers only, not to the other professions, but it doesn't violate equal protection. Well, the idea is that I'm trying to separate the court's constitutional right. And, by the way, you have to read Justice Brown's opinion, another dissenter. He says, and that's the truth, the Supreme Court didn't want to handle 20 to 40 attorney discipline cases every year. And that's the reason. And he said, hey, we could have split this up among the various appellate divisions. So it's not as much of a constitutional thing. But let's say that it is. But I'm trying to separate that. The unique scheme of the court begins once it comes to the court. I mean, the State Bar could do — let's say that one of the State Bar members would hit me in one of these hearings. Would I not have a right against the State Bar? Or any kind of — in other words, we are not at that point. There is a point at which the California Supreme Court's constitutional rulings' uniqueness begins. And that's once you get into the court, not the evidence-gathering position. And I believe the evidence-gathering position is governed by the rules, by the cases that I cited. And each one of them explains in detail what it is. And specifically, the Supreme Court case, you know, you go through it step-by-step as Justice Kennedy was doing. He says, look, what's his name? Kwon. Kwon was the policeman. Kwon has a reasonable expectation of privacy. Okay, hold on just a moment. I want to — before we move on, and we're now moving away from equal protection, what I wanted to make sure is — I understood you at the beginning to say there's another issue that you hadn't raised but you want to raise. That's not the same issue that's in your response, your supplemental response, with respect to equal protection. I'm not sure I understand what it is. But what I'm going to do is I'm going to give you leave to file a short supplemental filing, which will address this narrow question, whether there is any equal protection argument that survives the decision in Scheer v. Kelly. So if you want to — you can submit five pages on that. I don't want to — I don't understand how your argument — your argument doesn't make sense to me. Maybe if you put it in writing, that will make sense to me. Okay. You understand that? Yes. You can have a week to do that after — by the end of next week to submit that. All right. Now we're moving back to expectation of privacy and the subpoena issue, correct? Right. All right. Well, the — I mean — Let me — I have a question I want to ask you about that in terms of expectation of privacy. Assuming the Fourth Amendment applies in this context, in order for there to be a Fourth Amendment interest, there must be an expectation of privacy, right? Right. Now, when I think of a client trust account, it strikes me that the money that's going into the trust account is being held in trust for the client by the attorney. So those funds are primarily owned by the client, not by the attorney. So it strikes me that the primary privacy interest at stake, just simply in terms of having a financial account, would be an interest that would be possessed by the client, not by the attorney, because the funds don't belong to the attorney. The funds belong to the client. Well, in my case, they were my money in that, too. You mean you deposited money into that account, too? Right. So — But were you supposed to deposit money? Isn't that money supposed to be limited to client money? Let me add something to it, because it's not in the — but since the U.S. Supreme Court case talks about electronics function in the trust account, one of the major things that the State Bar brought against me was that I withdrew $40 a couple of times a day over the years. And they counted every one of those $40. This was my money. There was no question that if it was anybody else's money, my money. I went to, you know, it's simple. I always think — Wait, wait, wait, wait. Let me ask you that. Why is it your money if it comes from a client trust account? Well, because I deposited money that we earned. For example, specifically, I represented a client in New York in social security matters, and they gave a check to both of us. So I deposited the money into the client trust account. But until you make a distribution and an accounting, until that occurs, isn't that money the client's? Well, once social security tells you in advance when they send you a check that here is the — this is yours, and this is the client's. So specifically, that was one case. But why would you put your own money that you own into a client trust account? Isn't that considered commingling? Well, you know, the interesting thing is, and this will further down in our discussion will come up, the dispute was over $400. Okay? That's it. They charged me with gross negligence in handling the $450, which was the filing fee. Under the state bar rules, there is a rule that in significantly small amounts will not be counted. But it turns out that that rule is only applicable if you are willfully taking the money out, rather than with gross negligence. So that was the rule they got out of it. But I'm just saying that it was a very small amount of money, and yet there were 150 charges of this $40. You're a little sidestepping my question. So am I understanding you correctly that, yes, it was wrong to do it, but it was de minimis? That was one of the arguments, yes. I understand that. One of the arguments was de minimis. But do you acknowledge that it was inappropriate to take money out? Well, gross negligence, I suppose it's inappropriate. But it wasn't willful. They specifically said that it's not willful. That's the reason they did not apply, because the state bar regulation says that it's only applicable to willful withdrawal of money, and mine was gross negligence. I don't have to confess. I don't understand why they make that distinction. It doesn't make sense to me. That's a major point. There were a lot of things. But that's the question of whether a de minimis exception applies. I'm still, I am concerned about your practice of taking money out for personal purposes. That strikes me as not what a careful lawyer should do in treating a client trust account. You can open up another account, put your own money in that, and take out as many $40 withdrawals as you want, but once you have a client trust account, the rules become much more strict. To give you exactly the exact story is kind of important. When I came to San Francisco in 1965, I was working for the Wells Fargo Bank in the International Division. I had a free checking account. I had that free checking account. I still do. When I passed the bar and I started practicing, I turned that into a trustee account. It became a trustee account. Then sometimes in the 1980s, they came about that the trust account has to pay a dividend. So I told the Wells Fargo, okay, pay the money in the state bar. He said, we're not going to do it. So that's when I opened the Bank of the West account as a second— You say, you mean interest? Interest is paid to the state bar. So the trust account started earning interest and that complicated the accounting of it because who owned the interest? Is that the problem? Well, no. I'm just saying the hardest that you're asking why it wasn't. Essentially, I always had two trust accounts. I still do. For 45 years, well, for 25 or 28, I had two. So I didn't really that much pay any attention to this thing. You know, I used both of these accounts. I deposited what I received. You haven't maintained a personal checking account? That was my personal checking account. Which one? Which was the Wells Fargo. So the Wells Fargo was your personal. Well, the Bank of the West was your current trust account. Both of them were trustee accounts. I mean, they have it on trustee accounts, you know. And nobody said anything. Incidentally, even when I was trying down a $40 difference, nobody said anything. I did that for 25 years until the state bar called me. I said, nobody told me that I cannot do it. And suddenly, a week later, the state bar ordered the Bank of the West to disallow these withdrawals. Okay? So there were no rules. I mean, I had done this for 45 years, and suddenly all these things come up, though they were not designed this way. I'm just telling you what happened so you understand. I'm not trying to say that I was right. I'm talking to you, Tom. This is why it happened. So these are the regulations, such as, as I told you, that business and professions code, that puts the undue burden that Justice Berzon requires for equal protection. Requires that you... Now, the state bar regulation and business and professions code 6509, or whatever it's listed in my brief. And the point on that is, is that the 2012 statute passed. And when you get to the review department's review, and I cite that exactly at what point they're saying that, you know, I had consented by that statute. But they did not say the complete statute. The statute requires the state bar to notify the members of the state bar on a yearly basis of this thing. Now, they haven't done it at all. Not once. Obviously, this case started in 2014, and that statute was passed in 2012. But nevertheless... So can I ask you this question? What was the prejudice to you of failing to receive notice? Well, then I would have done it differently. I mean, if somebody notified me, once the state bar notified me of something... So what would they have notified you of? They would have notified me that, hey, you are now in your trustee account. You are not allowed to do something because... No, all that they would have informed you of is that your trustee account is presumably subject to our review. But the idea is, Justice Berzon, in her opinion, and that's why this case is relevant to this one, is that actually when the state bar passed that section, business and professions code section, I only had inquiry notice. I didn't have the notice that was required under the due process clause. But the notice, my understanding, reading the statute says, the statute says that by operation of the law, your client trust account is presumed, you presumably give permission to the state bar to investigate and review your trust account. So if you had known, if they had sent you this notice, okay, so you're the lawyer, you get the notice saying, well, the state bar can take a look at your client trust account. What difference would that make to you in a practical sense? What would you have done? You wouldn't have done what you did? No, then I would have looked it over and say, okay, if they can do this, then maybe I should open another account. I mean, notice, inquiry notice, that's what Justice Berzon said. I had inquiry notice, and she said that's not enough. They have to be actual notice. And correspondingly, if you look at the U.S. Supreme Court case, Justice Kennedy said Juan had consented to the review of his, this. So let me just take you back in time to 2014 or 2013. The statute changed in 2012, right? Right. So 2013, let's say you received this notice. It's hard for me to believe anybody would pay attention to this notice, but let us say it came to you and it said, oh, by the way, we just want to let you know that this California business proficiency code changed. And we wanted to inform you that from now on, you will be deemed to have given the state bar permission to examine your client trust account. So it's 2013. You get this message from them. What practical difference would it have made to you in 2013? What would you have done if you had received that notice? Well, I probably would have moved it to another bank or something. I would have looked into it. How come, I mean, suddenly. But you would have, whatever bank, I mean, it wouldn't have changed the way you were doing business, would it have? You were operating under my sense of what you're telling me, from what you just told me is you believe that what you were doing was appropriate. There was nothing. Yes, yes. Right. So the fact that you would have gotten this kind of a notice that the state bar could look into what you were doing, that wouldn't have made any difference to you because. No. You would have just done the same thing anyway because you thought that was the appropriate. There was nothing inappropriate about what you were doing. No, I mean, when somebody tells me that, hey, something is inappropriate. They didn't say that. All that that statute says was we can look at your account without your permission. Just want to let you know that. It's a new law in California concerning client trust accounts. But you've already told me that the way you were dealing with your client trust account based upon your experience and practice, that was the way you did business. So I'm searching for any way in which the failure to give you notice caused any kind of prejudice at all because my understanding is you did what you did and you would have done it differently because you didn't think there was anything inappropriate about what you did. Well, any time I got a notice from the state bar, I did read it and I researched what they were saying, whether it was right or whatever. I certainly did. What I'm trying to explore is there's two things here. One, can they get a look at it? And two, if they look at it, how is your behavior? Well, can they look at it, number one. Number two, how do you deal with your trust account? You deal with your trust, the way you just told me you deal with your trust account is according to your practice of treating that money as withdrawable by you for whatever purposes you have. So if in your own mind you thought you were handling your client trust account appropriately, then there was no need for you to take any steps one way or the other concerning this statute that would let the state bar have access to that account easily. You might have moved it to a different trust account or maybe not, but that wouldn't have changed the state bar's ability to come and look at what you did and there was no reason for you to change what you did because you thought what you were doing was appropriate. So I understand the technical point you're raising, that there was a technical violation of the statute in terms of giving yearly notice or even any notice at all, but what I'm struggling with is why it matters here because you would have done the same thing anyway. Let me tell you why it matters. If you read the Supreme Court case, Justice Kennedy is reasoning on this point and he discusses the search of the office of a physician who was working in a public hospital and he makes a differentiation. He says if the search was for, let's say, just looking for office documents or hospital documents or whatever, then that is fine, but if the hospital or the agency that regulates doctors intended to have some kind of a, let's say, pre-regulation search, then it is very important and that's the case of O'Connor versus Delgado and that would have been in my case because, in effect, Justice Kennedy said, look, it doesn't make any difference whether or not he agreed. You still have to go through the rules of the Fourth Amendment and you have to always make sure whether it was reasonable and that's why I couldn't, I practiced for 45 years here. I'm going to be 80 years old in December, so I spent a lot of my life in this and I cannot conceive that there has not been a state bar case or a California Supreme Court case involving the trustee account. When all, I would say probably 80% of the state bar matters involve fees, fee disputes, and so it automatically leads to a search of the account, but there isn't an account, there isn't a case that tells you, hey, this is what would happen, so all we have is to look at these three cases that fortunately are of the Ninth Circuit and analyze it under Cramer and then under Cramer, you don't have to worry whether it's, whether the Supreme Court is doing it under the sui generis analysis or what. You're just saying, hey, what is, does the Fourth Amendment apply independently and if you think that it is, then you don't recognize that judgment or whatever, that decision that the state court did. I mean, that seems to be, that's the basis behind Cramer, one of the reasons. You have an independent analysis of whether or not the Fourth Amendment or whether equal protection or due process have followed, and if you think that it is, then you don't need to recognize the decision. That's what I think, what Cramer says. That's a correct statement of what Cramer says. So, that's why I, and I never got from anybody a review as to, because as I say, the Supreme Court says that even though Kwan agreed to a search with or without notice, Justice Kennedy says, you still have to analyze the Fourth Amendment, and yes, Kwan had a Fourth Amendment interest in his search. That was a criminal prosecution, right? I beg your pardon? Kwan was a criminal prosecution? No, no, no. It was a case, the city of Ontario purchased these beepers for 20 of its members from an agency to its SWAT department, and under this, they had a certain number, something like 24,000 minutes that they could use, and there was an agreement between the city and there was an agreement between the electronic agency that the extra money, if they went over this 24,000 minutes, then they would have to pay. So, the sergeant, Sergeant Duke, I mean, the Lieutenant Duke promised every one of these guys that look, if you're paying the overage, anything that you, that overage, you have to pay for that yourself. And so, they paid it, and what happened, Kwan had a girlfriend, and he was making sexually related calls, which somehow was found out by his wife, who was also working at the Ontario Police Department. So, naturally, she reported it, and the whole thing started. And the defense of Kwan and all the other police officers was that it was an unreasonable search, that there was no probable cause, that the subpoenas were incorrect, et cetera. And so, it came, but in effect, eventually the case took about seven years by the time it finished, so you can see why I didn't go along that way. I cannot start at my age a seven-year-old case against the state bar. I'd like to handle it in a shorter way. But that's what it's, Kwan agreed, just as I agreed, assuming that I had notice of that state bar, I mean, business and professional scores. You still have to analyze whether or not the Fourth Amendment has been violated, and that's what Justice Kennedy says. He goes into very much into detail, I tell you, several times. So, is there a case called Reed that you're talking about? No, the case, I'm talking about- It's Kwan is the case. Kwan. Q-U-O-N. Q-U-O-N, right. Actually, City of Ontario versus Kwan. It's a 2010 case. Right, I have that case. But then, as I say, basically, it's not a ruling. It's an eight-to-one decision of the U.S. Supreme Court. So, everybody came up with a different idea.  is that the electronic things should not be really regulated because we don't know how they operate, where we are, et cetera, et cetera. It's too complicated. So, the decision was that it was reasonable search on the ground that these were government employees, and the equipment was owned by the city, et cetera. But fortunately, as I say, Justice Kennedy goes through the various ifs and buts of the Fourth Amendment, and that's where I got some of my ideas. In addition to the other case that comes out from Alaska, where the United States versus... Golden Valley. Yeah, and that explains the subpoena. And it's clear. I mean, you can see there's no question. That case says that the government has to satisfy due process, has to do some preliminary investigation. Then, it has to get a declaration setting forth what caused them for the suspicion. The suspicion was very important because in Alaska, the marijuana plant used a lot of electricity. But also, in Alaska, it's known that the amount of electricity used is caused by other factors, not by marijuana. So, anyway, you have to have investigation. You have to have a reasonable suspicion. You have to get it into a form, and you have to get it into a subpoena. And you can see in this subpoena, there wasn't even a name on it. It's clearly a John Doe subpoena. And the non-circuit held that John Doe subpoenas are not good. So, that is really the question. A state agency, a state bar, an administrative agency, using an administrative subpoena, is it governed by the Fourth Amendment? And, as I say, in my opinion, it does. And it does not come under the, I would say, eugenics argument of the California Supreme Court majority. And as far as the, whether or not, as you can see, even the appellate section admits this is, at most, at most, I can, the bad thing that I did is that through gross negligence, I had taken a $459 fee. And the, so I looked up the state bar, as I say, has a, quote, unreasonably, unless it's unreasonably small, but there's no definition of what unreasonable small is. So, I thought that the idea would be, what is it, petty theft, you know, at $750, you know. So, but they said that because it was through gross negligence rather than willful conduct, this unreasonable small amount, quote, does not apply. Secondly... Let me ask you this question. Are you arguing that regardless of whether you got notice under the statute, even if you had received notice under the statute, you're attacking the constitutionality of Section 6069 in so far as it deems lawyers to irrevocably authorize disclosure of client trust accounts? I'm saying that under Kennedy, Justice Kennedy's argument, I certainly can argue, it wasn't the holding of the case, as I said. He just goes through a lot of items because all the... But that didn't, I mean, that case did not involve a statute that says you have irrevocably authorized disclosure of a trust-funded record. But in that case, what was involved is that Kwan wrote, agreed in writing that they can search his account. And Justice Kennedy said, even if that is, he still had the right to, under the Fourth Amendment, to complain. And he had a... Take a look at that. But to get back to the second point, the federal case, the federal courts use a de minimis argument, and there's a U.S. Supreme Court case, which I cited in there. And essentially, de minimis non cura lax means that the court would refuse to consider a trifle matter. And there is a case in the Seventh Circuit involving United Airlines where the court held that de minimis is applicable. Incidentally, the very same idea I used in one of my cases, one of my clients who actually complained to the state bar that she was stealing a $200 shoes. And I used this argument, and Judge County dismissed that argument. And I took it out, and I was hoping that the Ninth Circuit would adopt the Seventh Circuit analysis about de minimis, but that didn't happen either. But it is something that has been around for a long time. It's really going back to Roman times, and I feel that the amount was such a small amount, $450. And incidentally, as you can see, originally, there was a claim for attorney's fees, $2,000 attorney's fees, and $450 filing fee. And during the hearing in the appeal, the appeal court dismissed the attorney's fees. They said I was entitled to that. The only question was the $450 filing fee. And the basis for the $450 filing fee came up, this lady came to see me regarding a trust for her father regarding Medi-Cal problems. And I had seen her several times, and then she said, I don't want to bother with that. And then about two months later, she comes back to me and says, okay, I want you to sue my brother because he's bothering me. So I told him, okay. Before the original case, I told him I need $2,000 and $450 filing fee. So when a dispute arose with the State Bar, I sent her a bill involving not only the second case, but the first case. I had done work on the first case several hours. So I billed her and I told the State Bar that there's a section of the commercial code that allows an attorney to convert the attorney's fees, I mean the filing fee into attorney's fees. There was no question about the attorney's fees I was allowed. That's how we got down to, they said, you're not entitled to the $460 because it's filing fee. And you didn't think the filing fee was going to be necessary? You did not think the filing fee would be necessary? It wasn't necessary because it was a, let's say, a restraining order against the brother and there is no filing fee for restraining orders. So that's what she asked you to do, right? Get a restraining order? And you looked into it and you decided that the better strategy was to prepare the proposed complaint that you did that was... No, no, no. I fulfilled my requirement for the restraining order. She just didn't think that it was going fast enough. And so that's why she fired me. Well, what about the other document, the one that you... The other document I finished, I completed, I gave it to the State Bar. That was a trust document. But the trust document would have required a filing fee, right? And you were... recommending that she file the trust document. Well, that's what she asked. Originally, that's how it came. And if you'd done the trust document, you would have had to file the $460 filing fee. Right. But then she abandoned that. But not until after you had sent her a letter with her accounting, right?  But you sent her the accounting of $2250 or something like that in attorney fees for doing the trust document. Well, it was $2,000, $2,000 retainer. But in order to have done that, you would have had to... completed it at the time you did the work. You knew, probably, or should have known that you would have had to pay $460 to file that document. She was a 20-year-old girl, so it was not... it wasn't even her money, it was the mother's trust money. I'm talking about you right now. So you, in terms of, you spent, or you built her for $2250 and you withdrew those funds from the account. But you knew that if she actually went forward, you would have had to pay the $460 filing fee, but there wasn't $460 left in the account, right? There was no more $450 filing fee at issue. That project was abandoned. She didn't want to tell me, I don't want you to do that. I want you to do this. So it's the thing that when you do more than one thing for the client, is the client responsible for the fees? They never said that, as you can see from the opinion, nobody in the 45 years has ever told me that my fees were unreasonable. And you can see the very case... It's not the issue, the State Bar was focusing on it. They were focusing more on the question that you had withdrawn funds from the client trust account below the $460. In other words, you didn't reserve the $460 for the filing fees. So your response, as I understand it, is, well, it was okay for me not to do that because I applied those to attorney fees, because I converted them because attorney fees, because it would have been necessary to do it. But what's puzzling me is why it is that you drafted the petition at a time when you had apparently extended fees more than, you extended fees in excess of $2,000 going into the $460, and you didn't reserve that $460 in the account when you knew that the petition that you drafted in order for it to be filed would require the filing fees. My defense was, as I explained to you and I explained to them, I had two trustee accounts, and there was no question that I had more than money, $2,000 in the two trust accounts. That wasn't the issue, that in my two trust accounts I had enough money. They said, that's not a real trust account because we don't get any money from it. Well, I never paid attention, as I told you. I worked for Wells Fargo, I got a three, it was a great thing. I never even thought about that. That was one idea, that I had more than one account. Wait, I'm sorry to interrupt. I thought you said earlier that the Wells Fargo account, even though it said trustee, was what you used for your personal account. Now you're telling me that that Wells Fargo account was another trustee account. Is that what you're saying? It was my only trustee account for 30 years. Now you're telling me, though, that you had two trustee accounts, and when I ask you that the balance here went below the 460, you're saying, well, that's not a problem because I had the other trustee account. But that other trustee account, it can't be used for your personal checking account. So you can call it a trustee account, but the fact is you use it as a personal account, and I'm trying to, I don't know, I guess I have a fairly strict view of how funds need to be handled in a client trust account. It's a trust account. It's not a personal account. So either it's a personal account or a trust account. If it's a trust account, it has to be handled in a special way, and you have a fiduciary obligation to your client to preserve funds. And I don't see, I mean, you may have an argument about the Fourth Amendment, but I don't see how the bar was wrong in concluding that you fell below that $460. And another matter, this was also raised, the reason actually it went up, another client gave me a retainer, which I deposited into my Bank of the West account. One is that issue, and that $1,000 bounced, and they charged a $35 fee, and that's why it came under it. And so that was the reason how this happened. And incidentally, after this happened, I got a call from somebody down in L.A., from the State Bar, a woman, and she said, okay, we don't have to worry about that. And she even sent me a letter, which I introduced into evidence that the L.A. people thought that the $460 issue has been settled and the whole thing is over. But I have a copy of that letter. I just wanted to read you this letter. It's from September 5, 2014, and it says, since this involves a deficiency of only $9, we are closing our file without further inquiry. However, in this part, I want to draw your attention to what else it says. We have a concern that you may need to give greater attention to the management of your trust account. You should be aware that reports of insufficient funds, checks being issued on a client trust account, may raise concerns of misappropriation of client funds and may result in a State Bar investigation into the matter. Therefore, if you haven't done so already, you should review your records to determine the cause of the insufficient funds activity and take the appropriate corrective measures to avoid future reports to the State Bar by your financial institution. And I did. And I called her back and she said, okay, everything is done. That's what it was. And then I was surprised, greatly surprised, that suddenly they called a filing an action against me. So the, but I was telling you the, incidentally, the attorney's fees, the, this was the first case. And after this was, this was over, this case in the State matters, they filed two other cases against me. I want to know what's going on. I have to ask you this. What is the status? Now, my understanding is that the State Review Department, State Bar Review Department, in a later case, after this proceeding, has now recommended this barman. Is that correct? That is correct. And I am, I have completed my papers. All I have to do is file it with the Supreme Court, which I will do either Friday or Monday, well within the time. I just have to have enough copies and et cetera. So that's being filed. The other case that they filed, 16 number something, the State Bar Hearing Department dismissed it. This was another woman who complained about money. And the judge went through, I went through all my sheets, you know, timesheets, and I gave it to the judge. And he told, he said he does a lot more work than he has. But anyway, that was the case where I had cited the de minimis question. And this lady took a, stole a $200 tennis shoes from the United Airlines Department that, you know, the Department gives out the clothes and things like that. So the argument I had in that case was that it was a de minimis matter and it should be dismissed based on the case. And other United Airlines case, which was out of the Seventh Circuit in Chicago. This is the case that you prevailed on? Yes. Okay. So that's gone away.  Nobody has ever got me on not doing the work for the attorneys. Nobody prevailed against me when I proved I have timesheets. This case, that case, whatever case. The only issue is this case is because it was a filing fee. And what about this disbarment case? What's your argument about disbarment being incorrect? Essentially, there are several arguments, but there are four. It's that the findings of the review department does not correspond to the statute. The idea is that I had ordered, I sent out a, what is it? You know, a bit of an examination. When a judgment better, you want to find out what it is. I sent out a judgment, a request to appear. And the original argument was that I was misleading the court that he was not the judgment better, but somebody else was. And the review department made a finding that the code, the business and professional code or whatever it said, that you cannot mislead a judge or a judicial officer. And the findings of the appellate department was that I misled the superior court. And that's not the same. So, I mean, I want to see if the Supreme Court is going to take that. There are seven or eight arguments. And if you want me to, I'll be happy to send you a copy. How long did the Supreme Court take to rule on your first petition for review? I don't remember, to tell you the truth. It wasn't more than three months. It was more than one month. It was something like seven weeks or something, thereabouts. But, I mean, I tell you, even if it is, I intend to take this up, I'm going to file it and do the tertiary in this, because my first case, I did file it. And I can tell you, I can bring those things in. My writ was granted first. I called the Supreme Court and they said, Albert Nichols Kuhn, granted. So I called back again and I said, ten minutes later, Albert Nichols Kuhn, granted. So I went to look for the order, the court issues and order, the long order, the words that were denied. And my case was not on it. So I said, yeah, sounds great. I'm going to call back at ten o'clock and finally find the court. And I said, hey, what's with this case? He said it was denied, the court denied it this morning. I said, what do you mean it was denied this morning? They were in session on, I think, the case about the Hawaii, anyway, major case. So I filed a request for reconsideration and that was denied. But nevertheless, there are new judges now, justices on the thing. And I mean, I definitely intend to file a new petition for certiorari on whatever. I don't know what the, as I say, the court under this sui generis analysis can deny anything. They don't really have to do anything. You've used the term sui generis. The court used that. I learned that from them. What does that signify? Sui generis to me means it's unique. It means unique. The court says that attorneys, as officers of the court, are a special class. We love them so much. Anyway, that we are special. And therefore, we are... Sui generis. Sui generis, we are unique, and as a result, our order, we're not dealing in cases or causes. The California Constitution says that any cause has to be decided by four members of the California Supreme Court. That's what it says. But the court in the case that I cited, that upheld the Constitution out. We are not dealing in causes when we're dealing with attorneys. We are dealing, we are giving an order, and the order is our order, and that's it, and that's the order we give. And there's no need to talk about... When you use the term sui generis brief, I think you said sui generis brief. The court uses it. The court, a majority opinion in that case, that's the reason that they use it as an explanation for... As I said, they are trying to get around the causes. Any cause under the California Constitution has to be decided by either two appellate judges or four Supreme Court judges. So the court is saying that we are not dealing here with causes. Attorneys are unique, sui generis, and therefore, we are giving an order, and we give an order, and anything we want to. I have another question. Your suspension became effective in August of 2017, is that right? August of 2017? I believe that even if it's reciprocal, that it should go back to the practice for what I recommend. But let me ask you this question. You didn't notify the Ninth Circuit that you'd been suspended, did you? No, I didn't. Are you aware that Ninth Circuit Rule 46-2 says, an attorney who practices before this court shall provide the clerk of this court with a copy of any order or other official notification that the attorney has been subjected to suspension or disbarment in another jurisdiction? To tell you the truth, my belief was that the suspension was automatic. So I was very happy to learn that I heard from you that, hey, it's not automatic. I thought it was automatic. You weren't aware of this provision required? No. All right. Mr. Kuhn, I don't have any other questions, and I think we have time for one more question. Yes, this is a question I meant to ask. So, getting back to the subpoena, you argued that the subpoena was defective? Yes. It wasn't accompanied by a declaration. Right. So was there any prejudice from you from the defects in the subpoena? I mean, other than the fact that you're saying that it wasn't, it should not have been respected because of that, but as far as the elimination of that information itself, was there any prejudice to you? Well, I mean, the prejudice was really the hearing department and, as I see, the total ignoring of the idea that the subpoena, I mean, just, I just couldn't get over it. I mean, I was prejudiced. I was, as I say, you know, having done this job for 45 years before somebody kicks me out, I like to get a reason, and I mean, I was just shifted around. Did you have notice of the subpoena? No. As a matter of fact, I looked at it later and said, we don't have to give notice. What basis would you have had to file a motion to quash if you had received notice, what would be the basis of your motion to quash? Well, I mean, the same thing, you know, the Fourth Amendment. I always believed that I was just kind of given a run around and really, to this very point, you know, I just can't imagine that the Fourth Amendment, and I did criminal work in the beginning of my practice a lot, and, you know, I filed a lot of motions in criminal cases to quash. I know the effect of a successful quash, and, you know, so I just couldn't say that they just ignoring it, but as I say, I explained it to you, I hope, okay, that why they had done it, but for all this time until I really was getting to this court, I couldn't imagine that. How come they didn't, and not answering that, Fourth Amendment and legal search and losing my job and the, and nobody answers, and the deputy, I brought this up to the deputy, what is it called, trial attorney or something, and I said, how come, here, here, here, I showed you briefs, I filed and all that thing, and all she said, you know, we have our own rules, and I just, you know, I just couldn't get over it. I mean, you know, federal constitutional rights, just suddenly ignored as nothing, and nothing happens. You complain to the next thing, nothing happens, and you complain to the next thing, and then they come up with a rule, and they never, ever, ever make a ruling, and only, but once I got to Justice Kennedy, he said, even if all these were true, they still, there was a I think that I should, and I hope, I mentioned that I had a very extensive bankruptcy practice, and so for me, the ruling of this court is not academic, you know, on the thing. If the court has denied the reciprocal, I could go on practicing bankruptcy law, so I can make a living. You're currently facing reciprocal discipline by the Northern District of California, too, is that correct? Well, to tell you the truth, I never had any hearing or anything, and so I was, once I get through this, I'm going to go there, I assume that whatever will be decided here will be definitely guiding the court, so I wasn't doing that. Well, the district court has its own reciprocal discipline proceedings, as you can tell from the Shear case in Central District, imposed reciprocal discipline, and then she has their own bar rules, and I suspect they also have a requirement that you self-report, so have they issued any order to you? They had issued an order, but as I say, I didn't have a hearing or anything, so I was going to go back there and I was going to ask for a hearing. Well, I don't know, the rule I follow is the Federal Appellate Rule that guarantees a hearing. The Federal Rule of Appellate Procedure 46 gives you the right to a hearing. I don't know that there's any constitutional right to a hearing in this situation, I haven't really studied that. I don't know whether there is a right in the district court, though. Maybe, I just don't know. Generally, there was a right to a hearing, but as I say, no, I haven't taken care of that. If the Northern District imposes reciprocal discipline, that would preclude you from appearing in bankruptcy court in the Northern District. Well, I'm not going to do something about that. So if that's your goal, you need to address that with the district court. Basically, for some reason, this was very happy news when I got the letter from you or somebody saying that it's not automatic. Well, it isn't automatic. Let me just tell you that it's almost automatic. It's very rare that the court does not impose reciprocal discipline, because your burden is a heavy one to shoulder. But I will take a careful look at the cases that you cited, and I did understand the argument you made. I will prepare a report and recommendation about what disposition I would recommend the court take in this case, whether or not the court should impose reciprocal discipline. That report and recommendation will be served on you, and you'll have an opportunity to file a response, objections, or whatever that you choose to. The report plus any filing that you make will then be presented to a three-judge panel, and they'll decide ultimately on what to do. But there will be no more further hearings? No, I doubt it. It's conceivable that the court would ask for further hearings. They've never done that before, but I think this is the record at this stage that you're going to make. So we have all the state court records available to us, plus the filings that you made, plus I'm giving you an opportunity to make one subsequent filing of five pages to address the reciprocal protection point we discussed earlier. Thank you very much. Thank you for coming. I appreciate your argument. So this matter is then submitted pending the preparation of a report and recommendation. Thank you.
judges: Appellate Commissioner Shaw